IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

GISELA PONS,
individually and on behalf of all
others similarly situated,

    *Plaintiff*,

vs.

ARUBAANSE LUCHTVAART
MAATSCHAPPIJ N.V,
d/b/a ARUBA AIRLINES,
an Aruban company,

    *Defendant*.

_____/

CASE NO.:

**CLASS ACTION**

**COMPLAINT**

The Plaintiff, GISELA PONS (Pons), individually and on behalf of all others similarly situated, sues the Defendant, ARUBAANSE LUCHTVAART MAATSCHAPPIJ, N.V., d/b/a ARUBA AIRLINES (the Airline):

**NATURE OF THE CASE AND PARTIES**

1. This is a breach of contract action.

2. Plaintiff is an individual. She resides in, and is a citizen of, Venezuela, and she is *sui juris*.

3. The Airline is an Aruban entity that operates a certified airline that conducts business in Florida.

Page | 1

4. Plaintiff files this class-action complaint alleging that the Airline breached its contract with passengers who paid for air travel provided by the Airline.

## JURISDICTION AND VENUE

5. The Airline maintains a place of business in Miami-Dade County, Florida; has regularly scheduled flights between Venezuela and Miami, Florida, and Aruba and Miami, Florida, and holds a United States Foreign Air Carrier Permit with the U.S. Department of Transportation pursuant to 49 U.S.C. § 413.

6. The Airline also operates licensed and registered companies in Florida, including ARUBAANSE LUCHTVAART MAATSCHAPPIJ N.V., INC, which operates out of a principal address located at 5600 NW 36th Street, Suite 450, Miami, Florida 33166, and maintains a registered address in Miami, Florida.

7. The Airline's Chief Executive Officer, Mr. Esteban Valles, resides in Miami, Florida, and works out of an office in Doral, Florida.

8. The Airline's upper management reside in Miami, Florida, and the Airline's operations are based out of an office in Miami, Florida. The Airline's mailing address is a PO Box located in Miami, Florida.

9. Venue in this District is proper pursuant to 18 U.S.C. § 1391(b)-(c) because the Airline conducts business in this District and is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is

commenced; the Airline's contacts with this District are also sufficient to subject it to personal jurisdiction.

10. Jurisdiction is proper under 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act of 2005 (CAFA), because the aggregate amount in controversy exceeds $5 million (exclusive of interest and costs), and as a national class at least one class member (as well as the Plaintiff herself belongs to a different state than that of the Airline; hence there is at least minimal diversity between the parties, and well over 1,000 plaintiffs in the expected Putative Class. Therefore, CAFA jurisdiction is present.

**FACTUAL ALLEGATIONS**

***Generally Applicable Facts***

11. The Airline is a foreign commercial air carrier that provides international air travel services to consumers flying between the United States of America and (i) the Bolivarian Republic of Venezuela; and (ii) Aruba.

12. The Airline's website (https://www.arubaairlines.com) provides for online booking and lists Miami, Florida as a city that the Airline services.

13. When a passenger books a flight with the Airline, the passenger enters into a contract of carriage with the airline as to that flight. *See* attached Exhibit "A," Contract of Carriage. The Airline's terms of carriage are located on its website

(http://arubaairlines.com/en/wp-content/uploads/2015/08/Aruba-Airlines-Conditions-of-Carriage_EN5-7.pdf).

14. Each passenger pays an agreed amount for the Airline's air transportation services.

15. The Airline's Contract of Carriage provides as follows with respect to the taxes, fees and charges that are included within the purchased fare:

> **Applicable taxes, fees and charges imposed by the government or other authority, or by the operator of an airport and in effect at the date of purchase of the ticket, are included within the published fare**. If any tax, fee or charge imposed by the government or other authority, or by the operator of an airport is increased after the flight has been purchased, the Guest will be required to pay the increase prior to departure. If any tax, fee or charge imposed by the government or other authority or by the operator of an airport is decreased after the flight has been purchased the Guest will be refunded the difference upon request, and an administration fee will be charged.

16. The Contract of Carriage between the Airline and its passengers do *not* provide that passengers would later be required to pay an additional fee before being allowed to board for their flight (Exit Fee).

17. Despite the clear terms of its contract and the full payment of the tickets, the Airline conducted a program in which its ticket-holding travelers were required to pay such additional, extra-contractual Exit Fees at Airline's sole U.S. departure

airport, Miami International Airport (MIA), before being allowed to board their flights.

18.  The Airline already had the undisclosed Exit Fee program in place at the time the Airline entered into a contractual agreement with its passengers.

19.  The Exit Fee does not relate to any fee, tax, or charge imposed by a government or the operator of an airport after the ticket was purchased.

20.  Upon checking in for their flights at MIA, the Airline requires all passengers departing from MIA to pay $80 USD before they are allowed to board a flight to Venezuela.

21.  Upon checking in for their flights at MIA, the Airline requires all passengers departing from MIA to pay $34.25 USD before they are allowed to board a flight to Aruba.

22.  Upon information and belief, such Exit Fees were charged to all passengers within the Class (as defined below).

23.  The Airline's website currently lists the aforementioned Exit Taxes on its website; however, this website disclosure is in direct contradiction to the contract between the Airline and its passengers, which states: "**Applicable taxes, fees and charges imposed by the government or other authority, or by the operator of an**

**airport and in effect at the date of purchase of the ticket, are included within the published fare."**

*Pons' Contract with the Airline*

24. Pons purchased her airline tickets directly with the Airline.

25. Pons paid the Exit Fee to the Airline before boarding her flight to Venezuala on two separate occasions while at MIA, May 25, 2013, and September 19, 2014. The Airline's personnel (dressed in the Airline's uniforms and attending the Airline's airport customer service desk) required all ticket-holding passengers (i.e., persons who had already contracted for their air travel and paid the sum contractually due) to pay the aforementioned $80 amount at MIA as an "airport exit tax" before departing. If a passenger refused to pay the Exit Tax, the passenger would not be allowed to board the Airline's aircraft.

26. Like the other passengers on her flights, Plaintiff paid the previously undisclosed Exit Fee in order to board the aircraft operated by the Airline.

27. The Exit Fee was not disclosed in any of the information or documents provided by the Airline to Pons prior to boarding the flights.

28. The Airline's Exit Fee charge economically damaged Pons in the amount of the charge.

29. All conditions precedent to the filing of this action have been met, waived or performed.

## CLASS ALLEGATIONS

30. Plaintiff brings this action on behalf of herself and all others similarly situated (the Class or Class Members).

31. Upon information and belief, the Airline has unilaterally charged its customers the Exit Fee alleged above before allowing its customers to board their already-paid-for flights.

32. Unlike common additional charges for baggage, seat upgrades, etc., the Exit Fee charges were not part of the terms and conditions of the contract of carriage between the Airline and its passengers.

33. Plaintiff seeks to represent a Class consisting of all persons that the Airline charged an Exit Fee, from five years prior to the filing of this Complaint through the earlier of: (i) the date, if any, the Airline changes its contract to expressly include Exit Fees; and (ii) the date of class certification.

34. Excluded from the Class are 1) Defendant, its agents, subsidiaries, parents, successors, predecessors, and any entity in which it or its parents have a controlling interest and their current and former employees, officers, and directors, 2) the Judge or Magistrate Judge to whom this case is assigned and the

Judge or Magistrate Judge's immediate family, 3) persons who execute and file a timely request for exclusion, 4) the legal representatives, successors, or assigns of any such excluded person; and 5) Plaintiff's counsel and Defendant's counsel.

35. Plaintiff and Class Members were economically harmed by the Airline's breach of its written contract.

36. This suit seeks damages for recovery of economic injury on behalf of the Class; the suit—expressly—is not intended to request any recovery for personal injury, lost baggage, delayed flights, or claims related thereto.

37. <u>Numerosity</u>: The exact size of the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. Upon information and belief, the Airline has thousands of consumers who fall into the definition of the Class, and the Exit Fee has been in place for numerous years involving all of the Class Member passengers during the applicable time period. Class Members can be identified through the Airline's records or the Airline's agents' or contractors' records. The joinder of the Class Members is impractical, and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court in avoiding a multiplicity of identical suits.

38. <u>Typicality</u>: Plaintiff's claims are typical of the claims of other members of the Class in that Plaintiff and the members of the Class sustained economic damage

arising out of the Airline's uniform breaches of its contract. Specifically, each Class Member entered into a contract that defined the terms of his or her relationship with the Airline and paid the full sum due under the parties' agreement. To provide the service that the Class Members contracted for and paid for, the Airline charged each Class Member a so-called "Exit Fee," without any basis to do so under the terms of the written contract. Given that each Class Member has suffered the same legal injury as a result of the Airline's common course of conduct, Plaintiff's claims are typical of the Class.

39.  <u>Adequate Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions and other complex litigation. Class counsel have the ability to bear the cost of prolonged litigation. Plaintiff has no interests antagonistic to those of the Class, and the Airline has no defenses unique to Plaintiff.

40.  <u>Commonality and Predominance</u>: This case will turn largely on the resolution of a singular question of law: whether, by charging the Exit Fees, the Airline breached the contract that it entered into with each Class Member. The resolution of that issue will involve common facts that apply generally to the Class Members. Given that the case turns almost entirely upon that singular legal inquiry, which is predicated on generally applicable facts, and that damages may

be readily calculated, the questions of law and fact common to the claims of Plaintiff and the Class predominate over any questions that may affect individual Class Members.

41. <u>Superiority</u>:  This case is also appropriate for class certification as class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable.  The actual damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense required for individual prosecution of the complex litigation necessitated by the Airline's actions.  In addition, the Airline Deregulation Act of 1978 preempts statutory claims that would enable greater damages and fee-shifting—essentially leaving passengers with only the private right of a breach of contract claims.  Given the limited amount of damages per breach (less than $100), it would be virtually impossible for individual Class Members to obtain effective relief from the Airline's misconduct.  Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive

supervision by a single Court.  Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

42. The interest of Class Members in individually controlling the prosecution of separate claims against the Airline are small because the maximum damages in an individual action for the breaches of contract are minimal.  Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

## BREACH OF CONTRACT

43. Plaintiff realleges and incorporates by reference paragraphs 1-42 above.

44. Plaintiff and the other Class members entered into a written contract with the Airline.

45. The Airline breached that contract by charging monies not provided under the terms and conditions of the contract in order to fulfill the Airline's obligations under the contract.

46. Plaintiff and the other Class members were damaged as a result of the Airline's breach of contract.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, GISELA PONS, individually and on behalf of the Class, requests the following relief:

47. As a result of the Airline's breach of contract, Plaintiff seeks for herself and each Class Member:

(a) An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class.

(b) $80.00 in damages for each and every breach stemming from an Exit Fee charged to passengers travelling to Venezuela.

(c) $34.25 in damages for each and every breach stemming from an Exit Fee charged to passengers travelling to Aruba.

(d) An award of attorney's fees and costs to counsel for Plaintiff and the Class from any recovery for the Class.

(e) Any other relief the Court may deem just and proper.

**TRIAL BY JURY**

Plaintiff demands a trial by jury on all counts so triable.

Respectfully submitted,

 /s/ John Cody German 
JOHN CODY GERMAN
Florida Bar No.: 58654

| | |
|---|---|
| John G. Crabtree, FBN 886270<br>Charles M. Auslander, FBN 349747<br>Brian C. Tackenberg, FBN 107224<br>CRABTREE & AUSLANDER<br>240 Crandon Boulevard, Suite 101<br>Key Biscayne, Florida 33149<br>Tel: (305) 361-3770<br>Fax: (305) 437-8118<br>jcrabtree@crabtreelaw.com<br>causlander@crabtreelaw.com<br>btackenberg@crabtreelaw.com<br>floridaservice@crabtreelaw.com<br><br>Jose L. Baloyra, FBN 84603<br>BALOYRA LAW<br>201 Alhambra Cir., Ste. 601<br>Coral Gables, Florida 33134<br>Tel: (305) 442-4142<br>Fax: (305) 442-4377<br>jbaloyra@baloyralaw.com<br>rcruz@baloyralaw.com<br><br>Milton Fuentes, FBN 123420<br>M. FUENTES & CO.<br>201 Alhambra Circle, Suite 601<br>Coral Gables, Florida 33134<br>Tel: (305) 447-1960<br>Fax: (786) 288-3808<br>mf@mfuenteslaw.com<br>sc@mfuenteslaw.com | Brian Torres, FBN 36498<br>BRIAN M. TORRES, P.A.<br>One S.E. Third Ave.<br>Suite 3000<br>Miami, Florida 33131<br>Tel: 305-901-5858 ext. 101<br>Fax: 305-901-5874<br>btorres@briantorres.legal<br>mrodriguez@briantorres.legal<br>e-service@briantorres.legal<br><br>John Cody German, FBN 58654<br>COLE, SCOTT & KISSANE, P.A.<br>Cole, Scott, & Kissane Building<br>9150 S. Dadeland Boulevard<br>Suite 1400<br>Miami, Florida 33156<br>Telephone: (786) 268-6415<br>Facsimile: (305) 373-2294<br>cody.german@csklegal.com<br>yvonne.orosa@csklegal.com | |

*Counsel for Plaintiff, GISELA PONS*